Kinkade, J.
This is an action to recover $1,000, 000 as damages resulting from a breach of a contract of employment. The plaintiff in error, Elmer Gross brought an action against the Youngstown Sheet & Tube Company and the other defendants, seeking tc recover $1,000,000. The issues were presented bj a second amended petition, an answer thereto, ano a reply. At the time the contract was alleged to havi *286 been entered into, Gross was a private detective residing at Gibsonia, Pa., near Pittsburgh. The Youngstown Sheet & Tube Company was an Ohio corporation, located at Youngstown, and engaged in the manufacture and sale of metal products. The other defendants were officers of the steel company. The initial contract between the parties consisted of a letter written by the steel company upon August 11,1922, to Gross, and by Gross accepted as an accurate statement of their contractual relations. The term of this contract expired, as therein provided, December 1, 1922. Gross alleged that at that time he and the steel company agreed orally that the. time of the contract should be extended so as to afford Gross an opportunity to further extend his investigations with respect to the subject-matter of the contract. Gross averred that, by this oral agreement of extension of time, the steel company agreed that, if Gross would go forward with further investigations, and was successful in procuring the evidence which the steel company desired with respect to the manner in which, and the extent to which, the steel company had been defrauded by its own employees and others, then and in that event the steel company would institute whatever actions in court, whether civil or criminal, which Gross deemed necessary to accomplish a recovery of property, or money in lieu thereof, which the investigation indicated the steel company was entitled to recover from those who had defrauded the company, and that the steel company would reimburse Gross for his time and expenses, and would give him one-half of the amount recovered from the wrongdoers.
Gross alleged that, pursuant to the original writ *287 ten contract of August 11,1922,-as supplemented by tbe oral agreement of December 1, 1922, he went forward with bis investigations, and that be was successful in securing all of tbe evidence asked for by tbe steel company, and that this relation of tbe parties continued up to tbe 2d day of June, 1923, at wbicb time tbe steel company informed Gross that tbe company had all tbe evidence that it needed in order to make tbe contemplated recoveries, and wrote Gross a letter inclosing therein a check to bis order for $10,000 to cover all claims that be might have against tbe company up to that time. Gross alleged that be declined to accept tbe check in full of all demands as stated in tbe letter of June 2,1922, and that thereupon, and for tbe purpose of -inducing him to accept tbe check, tbe steel company agreed orally that be should still bold bis interest in any recoveries that tbe steel company might thereafter make of tbe wrongdoers, and that bis interest of 50 per cent, in such recoveries should be paid to bim when made, in addition to tbe $10,000, and that tbe steel company would very soon begin all tbe actions, criminal and civil as well, wbicb were necessary to make . full recoveries as justified by tbe evidence Gross bad produced, to wbicb interpretation' and modification Gross assented, and thereupon accepted and cashed tbe check for $10,000, wbicb amount he has since retained.
Gross then alleged that tbe steel company bad wrongfully and fraudulently failed and refused to bring any action to recover property, or damages in lieu thereof, from tbe wrongdoers, to bis damage in tbe sum of $1,000,000, for which be prayed judgment.
Tbe steel company, by its answer denied generally ' *288 all wrongful acts charged against the company by Gross, and also specifically denied most of the statements made in the second amended petition. The steel company admitted that it had written the letter of August 11, 1922, and also the letter of June 2, 1923, and had sent to Gross the check therein referred to, for $10,000, which was cashed by Gross. The steel company averred that the contract of August 11, 1922, was null and void, for the reason that it contravened public policy. The steel company denied that it had made the oral modifications of the original contract on December 1, 1922, and June 2, 1923, as alleged by Gross. The steel company averred that, if the contract had been modified in the manner and to the extent as claimed by Gross, it would have been more violative of public policy than it was without such modification. The steel company also averred that there had been a full and complete accord and satisfaction effected between the parties by the delivery and acceptance of the check for $10,000 sent by the steel company to Gross.
The relations of the parties, as set forth in the letters of August 11, 1922, and of June 2, 1923, are best shown by those letters themselves, which read as follows:
“The Youngstown Sheet & Tube Company.
“J. A. Campbell; President.
Youngstown, Ohio, August 11, 1922.
“Gross-Capone National Detective Agency, Keystone Building, 324 Fourth Avenue, Pittsburgh, Pa. —Gentlemen: Referring to your letter of June 15th, directed to Mr. Meub, and confirming your conversation with me a few days since, you maly proceed to investigate for us the matter of our having been de *289 frauded. in material at our plant upon the understanding that you are to receive, as your full compensation, fifty per cent. (50%) of all amounts recovered and actually received by us as the direct result of your investigations and evidence secured thereby.
“No investigation shall be made of our records or of employees at our plant, except with the full understanding and approval, in advance, of our general superintendent, W. C. Reilly.
“We are to receive full information of all your investigations and findings, and all records, documents and evidential matter, of every character received by you are to be returned to us. No proceedings, civil or criminal, shall be commenced except with the approval of our counsel, and all proceedings, if commenced, shall be under the sole direction of our counsel.
“We will co-operate with you in every reasonable and proper way in furthering your investigation.
‘ ‘ This arrangement shall expire on December 1st, 1922, bp.t may be terminated at any time prior to such date by our giving you written notice to such effect.
“If so terminated by us without any compensation having been earned by you hereunder, as above provided, we will pay you, in lieu thereof, and as your full compensation hereunder, a reasonable amount for time and expense actually spent by you on this work.
“Very truly yours,
“ [Signed] J. A. Campbell, President.”
*290 “The Youngstown Sheet & Tube Company.
“Youngstown, Ohio, June 2, 1923.
“Walter E. Meub, Secretary.
“Mr. E. W. Gross, 324 Fourth Ave., Pittsburgh, Pa. — Dear Sir: Confirming our conversation of yesterday and this morning, I am handing you herewith check of the Youngstown Sheet & Tube Company in the sum of $10,000 in full payment and settlement for all your services rendered the company to date, and in full of all your claims of every character.
“It is understood, however, that if the Youngstown Sheet & Tube Company should secure a recovery, by settlement or otherwise, from the other company or any of its stockholders whose affairs you have been investigating, we will pay you such further compensation, taking into account the amount of the recovery, as may then seem just and proper.
“It is further understood that your employment is now terminated and you are hot to perform any further services for us unless we call upon you to do so, in writing.
“Very truly yours,
“The Youngstown Sheet & Tube Company, “[Signed] By W. E. Meub, Secretary.”
At the opening of the trial, counsel for Gross stated his case to the jury, and outlined the evidence by which he expected to sustain the issues stated. This statement embraced the facts - above narrated, and included the copies of the letters of August 11, 1922, and June 2, 1923. While making this statement to the jury, counsel for Gross, answering an inquiry made by counsel for the defendants, admitted that no recoveries in any amount had *291 been made from any of tbe wrongdoers, but did make the statement to tbe jury tbat, if tbe steel company bad instituted tbe actions suggested by Gross, the steel company could and would have secured recoveries amounting in tbe aggregate to not less than $2,000,000, and tbat therefore Gross was entitled to recover as damages in this action $1,000,000 in addition to tbe amount of tbe $10,000 check.
Counsel for tbe steel company at tbe close of tbe statement of tbe case to the jury by counsel for Gross, moved tbe court to withdraw the case from tbe consideration of tbe jury and direct a verdict in favor of tbe defendants, for tbe reason tbat the contract which formed tbe basis of tbe action was contrary to public policy, and for tbe further reason tbat there bad been a full and complete accord and satisfaction accomplished by tbe payment of tbe $10,000 to Gross. Tbe court of common pleas granted tbe motion on both grounds, and judgment was entered accordingly. Tbe steel company further moved tbe court to decree a cancellation of tbe alleged contract as prayed for in the cross-petition of tbe defendant, and this motion was granted. Tbe judgment entered in tbe court of common pleas was affirmed by tbe Court of Appeals. Tbe Court of Appeals held, however, tbat tbe original contract of August 11, 1922, was not at variance with public policy, and also held tbat tbe delivery of tbe check for $10,000, with tbe letter which accompanied it, when taken in connection with tbe oral agreement then claimed to have been made between tbe steel company and Gross, did not amount to an accord and satisfaction.
There are only two questions in tbe case: First, *292 did the contract between tbe parties contravene pub lie policy? And, second, was an accord and satis faction effected?
Tbe authorities are nearly all in accord that, where the contract is that the agent shall procure evidence of a definite character or such evidence as will pro» duce a definite result, and the agent is himself a stranger to the transaction, with no interest therein except that his compensation is to be a given percentage of the amount recovered, then and in thal event the contract does contravene public policy is null and void, and cannot be'enforced.
It should be kept in mind that the cause of action in this case, if any existed in favor of the steel company and against the wrongdoers, was not a cause of action sounding in contract, nor was it based or a tort in the form of negligent conduct. The subject-matter of this litigation was larceny, and grane larceny at that, to say the least. There was no element of mistake or negligence in any of the transactions. They were characterized by counsel foi Gross in his statement to the jury as thefts of the property belonging to the steel company, and they could not be less than that. Furthermore, it was claimed, and is still claimed, that the aggregate oí these larcenies would amount to more than $2,000,» 000, so that at least $1,000,000 would, by virtue oí thése contracts, if valid, come to Gross.
In view of the very definite terms of the letter oí August 11,' 1922, with respect to the reservations by the steel company of the full and complete power and authority at all times to say whether or not any prosecutions should be instituted, and, if instituted, how they should be carried on, and when they should *293 be terminated, and in view of the fact that that contract expired by its terms on December 1, 1922, it became necessary to base the right of recovery by Gross from the steel company largely upon the extension of the terms of that contract and a modification of its terms as well, which Gross averred had been accomplished by the oral undertakings of the parties on December 1, 1922, and June 2, 1923, by which the steel company waived its right to alone determine whether actions should be commenced, and, if commenced, under what conditions they should be prosecuted, and obligated the company definitely to’ pursue in these matters the course outlined by Gross. As was well said by the Court of Appeals in its opinion, this brought into the contractual relations of the parties elements clearly inimical to public policy and destructive of the right of recovery.
The contract is at variance with public policy, for the reason, among others, that it places the great temptation that it does on the part of the agent to, procure false testimony, or any kind of testimony that he thinks will assist in earning the $1,000,000 that he was to receive, if the litigation was successful.
We can see but one contract between the parties; that is, the contract represented by the letter of August 11, 1922. That letter surely called for evidence establishing the fact that these grand larcenies had been committed, and the evidence would be of no avail, except it were sufficient to produce a judgment of guilt against the wrongdoers. Throughout the second amended petition, and, throughout the statement of counsel of the case to the jury, the *294 single idea prevails at all angles, and that is, that Gross conceived himself authorized to dictate the action of the steel company upon the evidence that he should produce, and hence it is said, not only in the second amended petition, but in the statement of the case to the jury, that the company wrongfully and wilfully, and in fraud of the rights of Gross, declined to bring any action against the wrongdoers for the recovery either of property taken or for money in lieu of property taken.
This case is in no sense analogous to an action brought by a lawyer for his client with the lawyer’s fee contingent upon, and measured by, the successful outcome of the litigation.
There have been many decisions with respect to contracts that contravene- public policy. No two contracts are the same, and we think it would serve no useful purpose to again review the decisions that have been written on this subject. We have no hesitancy in reaching the conclusion that the contract in this case is clearly violative of public policy, and also that there was a definite and complete accord and satisfaction effected by the parties themselves on June 2, 1923.
The judgment of the lower courts will be affirmed.

Judgment affirmed.

Marshall, C. J., Day, Allen, Robinson, Jones and Matthias, JJ., concur.